UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
ALEXANDER D. FORD,

                            Plaintiff,

                                                          Case # 25-CV-6383-FPG

v.

                                                          DECISION AND ORDER

THE UNITED STATES OF AMERICA,

                            Defendant.

## INTRODUCTION

*Pro se* Plaintiff Alexander D. Ford ("Plaintiff") brings this action against the United States

of America ("Defendant") pursuant to 5 U.S.C. § 5542, 5 U.S.C. § 5596 ("the Back Pay Act"), 29

U.S.C. § 215(a)(3) (the Fair Labor Standards Act ("FLSA")), and 5 U.S.C. § 552a ("the Privacy

Act"), and 28 U.S.C. § 1346(a) ("the Little Tucker Act"). ECF No. 9. Plaintiff now moves for

partial summary judgment. ECF No. 11. Defendant opposes Plaintiff's motion and moves to

dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6). ECF No. 20.

Plaintiff opposes Defendant's motion. ECF No. 22. For the reasons that follow, Defendant's

Motion to Dismiss is GRANTED, and Plaintiff's motions for partial summary judgment and

motion to substitute are DENIED AS MOOT.

## LEGAL STANDARD

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must

decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision

on the merits and, therefore, an exercise of jurisdiction." *Pressley v. City of New York,* No. 11-CV-

3234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013) (citing *Magee v. Nassau Cnty. Med. Ctr.,*

1

27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)). Therefore, the Court first determines whether it has jurisdiction over this action before determining whether Plaintiff has stated a claim.

The plaintiff has the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *See Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). Additionally, in ruling on a motion to dismiss under FRCP 12(b)(1) for lack of subject matter jurisdiction, courts may rely on "evidence outside the pleadings." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). A failure to exhaust administrative remedies allows a court to dismiss an action because no subject matter jurisdiction exists. *DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 79 (2d Cir. 1992). Article III, Section 2 of the United States Constitution limits a court's subject matter jurisdiction to matters where there is a case or controversy. *Tanasi v. New All. Bank*, 786 F.3d 195, 198 (2d Cir. 2015), *as amended* (May 21, 2015). Thus, when the issues in dispute are no longer live, a case becomes moot, thereby depriving the court of jurisdiction. *Mulkey v. Niagara Cnty. Sheriff*, 720 F. Supp. 3d 237, 241 (W.D.N.Y. 2024).

A court deciding a motion to dismiss pursuant to Rule 12(b)(6) "must accept as true all of the allegations contained in a complaint. . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If that statement fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to Rule 12(b)(6). *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**BACKGROUND**

At the time of the events giving rise to the complaint, Plaintiff Alexander Ford was a federal civilian employee. ECF No. 9 at 2.[1] He is a preference eligible veteran in the excepted service. ECF No. 22 at 5. Effective March 23, 2025, Plaintiff was promoted to Engine Utilityman. ECF No. 9 at 2. As a result of the promotion, Plaintiff's annual salary was increased to $52,846—$18 per hour, with an overtime rate at $43.80. *Id.* at 4.

In the first two weeks of April 2025, Plaintiff worked 63 hours of overtime, and in the two weeks that followed, he worked an additional 50 hours of overtime. *Id.* However, Plaintiff's April 5, 2025 and April 19, 2025 pay did not reflect his new and increased salary. *Id.* at 3. Because the Government "falsely" listed his boarding date as April 23, 2025, Plaintiff was "den[ied] ship pay tied to his March 23[, 2025] promotion." *Id.* at 15. On April 24, 2025, Plaintiff filed a complaint with Larry Marek ("Marek"), the Ship Purser, regarding his wages and the accuracy of his Standard Form 50 ("SF-50") Notification of Personnel Action. *Id.; see, e.g., id.* at 13. Marek forwarded the complaint to Michelle Prado ("Prado"), a Marine Placement Specialist. *Id.* Marek also shared the complaint with senior staff, including Captain Aleana Lytle ("Lytle"). *Id.* On April 28, 2025, Lytle emailed Prado to have her "address and resolve" Plaintiff's compensation concerns. *Id.* at 3. Prado then oversaw a May 3, 2025 SF-50 revision that corrected Plaintiff's compensation for May 2025, but not for April 2025, *id.* at 9; Plaintiff's pay was still not corrected for the April 5, 2025 and April 19, 2025 pay periods, *id.* at 3. Additionally, the SF-50 continued to incorrectly list Plaintiff's boarding date as April 23, 2025 rather than February 13, 2025. *Id.* at 5.

---

[1] Although Plaintiff initially filed a proposed Second Amended Complaint, ECF No. 9 at 1-13, and a proposed Verified Supplemental Complaint Under Rule 15(d), *id.* at 14-26, the Court views the two proposals (*id.* at 1-26) together as the Second Amended Complaint. *See* ECF No. 8 (ordering the Clerk of Court to docket ECF No. 7 at 6-31 as a separate document).

On May 10, 2025, Plaintiff contacted Marek to express his concerns about his pay. *Id.* at 4. Marek then emailed Owen Butters ("Butters"), lead Marine Placement Specialist, to inquire about Plaintiff's missing April 2025 pay. *Id.* On May 12, 2025, Plaintiff again raised his concerns to Marek about the pay he was still owed. *Id.* In response, Marek emailed the Human Resources team. *Id.*

On May 15, 2025, Plaintiff requested permission for a brief absence to refill a prescription for sleep mediation. *Id.* On or around May 30, 2025, Plaintiff took part in a performance evaluation by his supervisor, Christopher Towle ("Towle"). *Id.* Plaintiff received an overall rating of "Excellent." *Id.* On May 31, 2025, the agency placed Plaintiff on involuntary medical leave "without a stated reason." *Id.* Plaintiff submitted medical documentation on June 4 and July 8, 2025. *Id.* It appears that Plaintiff believed such documentation supported a reason for medical leave, and not an "unstated reason." *Id.*

On June 23, 2025, Plaintiff submitted a complaint to Deputy Director Valerie Brown ("Brown"), in which he challenged the boarding date of April 23, 2025 that was listed in his May 2, 2025 SF-50 and the resulting issue with his April wages. *Id.* at 5. On August 4, 2025, Plaintiff submitted a request for leave to Prado. *Id.* at 16. On August 8, 2025, Prado emailed Plaintiff, noting that Plaintiff had officially been categorized as Absent Without Leave ("AWOL"), effective August 3, 2025. *Id.* However, between May 31 and August 8, 2025, Plaintiff claims he was under dual protective leave—shore leave and involuntary medical leave—and thus, should not have been marked as AWOL. *Id.* Also, on August 8, 2025, Plaintiff was abruptly removed from the medical leave list and deemed fit for duty, pending a hearing assessment. *Id.* at 17. He was instructed to report to the Courtyard by Marriott in San Diego, California no later than August 16, 2025; otherwise, he would be marked AWOL on August 17, 2025. *Id.*

4

In his Second Amended Complaint, docketed September 11, 2025, Plaintiff seeks this Court to compel Defendant to provide him with back pay in the amount of $2,457.28, to account for the April 2025 wages he should have been paid. *Id.* at 4. In his Motion for Partial Summary Judgment, docketed October 1, 2025, and Plaintiff's Declaration, docketed October 8, 2025, Plaintiff concedes that on September 26, 2025, he received a payment of $2,800 as retroactive pay for April 2025. ECF No 16 at 4; *see* ECF No. 11 at 5.

Plaintiff's Second Amended Complaint was docketed on September 11, 2025. ECF No. 9. Plaintiff filed a motion for partial summary judgment on October 1, 2025. ECF No. 11. On October 9, 2025, Plaintiff formally resigned from his job. ECF No. 17 at ¶ 2. Defendant filed its opposition to Plaintiff's motion for partial summary judgment and motion to dismiss on November 26, 2025. ECF No. 20.

In his Second Amended Complaint, Plaintiff brings (1) a claim for unpaid back wages in violation of 5 U.S.C. § 5542, the Back Pay Act, and pursuant to the Little Tucker Act; ECF No. 9 at 1, 6; and (2) a claim for retaliation pursuant to the FLSA, the Privacy Act, the Back Pay Act, and 5 U.S.C. § 5542, *id.* at 1. He also seeks injunctive relief pursuant to the Privacy Act to compel Defendant to (1) amend Plaintiff's SF-50 paperwork to show a boarding date of February 13, 2025 rather than April 23, 2025, *id.* at 7, 18; and (2) remove Plaintiff's August 3, 2025 AWOL designation, *id.* at 18.

## DISCUSSION

Defendant moves to dismiss Plaintiff's claims for back wages and retaliation. ECF No. 20-1. Defendant also argues that the United States is not the appropriate defendant in Plaintiff's motion for injunctive relief, and thus, the claim must be dismissed. *Id.* The Court addresses the

arguments below.[2]

### I.    Claim for Back Wages

First, Defendant argues that pursuant to the Civil Service Reform Act of 1978 ("CSRA"), Plaintiff's claims for back wages are jurisdictionally barred. ECF No. 20-1 at 13. In the alternative, Defendant argues that the case should be dismissed because the issue is moot. *Id.* at 17-18.

### A.  CSRA and the Back Pay Act

Defendant argues that this Court lacks jurisdiction to consider Plaintiff's Back Pay Act claim. ECF No. 20-1 at 13. It argues that the CSRA deprives federal courts of jurisdiction to hear federal employee personnel claim, except for those involving discrimination. *Id.* at 12. Specifically, it argues that major personnel actions must be brought to the Merit Systems Protection Board ("MSPB") and less serious prohibited personnel practices must be brought to the Office of Special Counsel ("OSC"). *Id.* at 10.

The CSRA covers three general types of personnel actions: (1) prohibited personnel actions, 5 U.S.C. § 2302; (2) actions based on unacceptable performance, 5 U.S.C. § 4303; and (3) adverse personnel actions, 5 U.S.C. § 7512. When a claim falls within one of these three types, the CSRA outlines the procedure where an employee may seek back pay. *See United States v. Fausto*, 484 U.S. 439, 445-447,455. While Defendant argues that the CSRA prevents Plaintiff's back pay claim from being pursued in federal court because it arises from the "employment relationship," ECF No. 20-1 at 12-13, the CSRA does not cover all personnel actions. *See Comey v. United States Dept. of Justice*, No. 25-CV-7625 (JMF), 2026 WL 1142679, at *5 (S.D.N.Y. Apr. 28, 2026). Here, Plaintiff's claims for back pay do not involve a personnel action governed by the CSRA

---

[2] Defendant also argues that the Civil Service Reform Act precludes any claim for emotional distress damages. ECF 20-1 at 16. In his response, Plaintiff concedes that he is not seeking emotional distress damages. ECF No. 22 at 7. Therefore, the Court will not address this further.

since Plaintiff's claim for back pay is not based on prohibited personnel practices, unacceptable job performance, or adverse personnel actions. *See* 5 U.S.C. §§ 2302, 4303, 7512. Rather, this case concerns Plaintiff's entitlement to back pay for Defendant's failure to pay him his increased pay following his March 2025 promotion. Thus, the Court is not persuaded by Defendant's argument that it has no jurisdiction pursuant to the CSRA as to Plaintiff's claim for back pay.

### B. Back Pay and Mootness

In the alternative, Defendant argues that Plaintiff's claims must be dismissed because his claims for back pay are moot. ECF No. 20-1 at 17. "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (internal quotations and brackets omitted)). A party has a "personal stake in the outcome of the lawsuit" when he or she has "suffered, or [is] threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (internal quotations omitted). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).

In his Second Amended Complaint, Plaintiff seeks monetary relief in the form of $2,457.28 to account for what he should have been paid in April 2025 following his March 2025 promotion. ECF No. 9 at 4. In its motion to dismiss, Defendant explains that it "recognized its oversight, corrected the record, and paid Plaintiff" $2,809.66 on September 26, 2025. ECF No. 20-1 at 17. Plaintiff acknowledges as much, stating he received $2,800 on September 26, 2025. ECF No. 16 at 4. Accordingly, Plaintiff's claim for back wages from April 2025 is DISMISSED AS MOOT.

## II.    Claim of Retaliation

Plaintiff claims Defendant retaliated against him, in violation of the FLSA, the Privacy Act, the Back Pay Act, and 5 U.S.C. § 5542.[3] In its Motion to Dismiss, Defendant argues that Plaintiff's claims for retaliation are jurisdictionally barred under the CSRA. This Court agrees.

Here, Plaintiff alleges the following allegations regarding his retaliation claim:

> On or about May 2025, the employer initiated a false narrative that the Plaintiff boarded the ship on April 23 while deliberately concealing the March 26 promotion action. This concealment sustained the April pay discrepancy and obstructed access to earned compensation, constituting both a retaliatory motive and material harm.
>
> []The employer's adverse actions commenced just eight days after Plaintiff's April 2025 wage complaint, supporting a strong inference of retaliation for protected activity under applicable anti-retaliation statutes.

ECF No. 9 at 5-6.

The CSRA prohibits an authorized employee from taking personnel actions, such as decisions concerning pay, in response to an employee who exercises a complaint. 5 U.S.C. §§ 2302(a)(2), 2302(b)(9). The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *Fausto,* 484 U.S. at 455. For covered actions, the CSRA establishes the "exclusive remedy by which [federal] employees" can challenge personnel actions. *Tiltti v. Weise,* 155 F.3d 596, 600 (2d Cir. 1998). Here, to the extent that Plaintiff alleges that Defendant took a prohibited personnel action in response to Plaintiff's complaint, this Court does not have subject matter jurisdiction to hear this claim. Plaintiff is alleging retaliation against a federal employee, which falls squarely within the Prohibited Personnel Practices section of the CSRA. *See* 5 U.S.C. § 2302(b)(9) (explaining, in part, that an employee with authority shall not

---

[3] The Court construes the Privacy Act claim in the context of a retaliation claim. To the extent that Plaintiff is attempting to raise another claim under the Privacy Act, he is free to do so in any amended complaint.

take or fail to take any personnel action against an employee for exercising their right to appeal, complain, or grieve).

Thus, because Plaintiff alleges retaliation based on personnel action following a complaint, it is covered by the CSRA.[4] Whereupon the CSRA covers a certain action, the CSRA provides the exclusive authority for review, and this Court does not have subject matter jurisdiction. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11-12 (2012) ("Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court."); *see also O'Connell v. Hove*, 22 F.3d 463, 467 (2d Cir. 1994) (holding the CSRA directs that collective bargaining agreements shall be "exclusive procedures" for resolving overtime pay action brought pursuant to the FLSA). As such, this Court does not have subject matter jurisdiction.

### III. Claim for Injunctive Relief

Plaintiff seeks injunctive relief to compel Defendant, pursuant to the Privacy Act, to amend his SF-50 and remove his AWOL status.[5] ECF No. 9 at 7. Defendant argues that the Privacy Act claims cannot be maintained against the United States because the Court lacks jurisdiction to review this claim.[6] ECF No. 20-1 at 17.

---

[4] To the extent Plaintiff argues that President Trump's Executive Order, Exclusions from Federal Labor-Management Relations Programs, impacts Plaintiff's ability to file union grievances and take part in arbitration, ECF No. 9 at 3, such argument is irrelevant to the Court's analysis.

[5] Although Plaintiff also seeks "declaratory relief," ECF No. 9 at 7, he provides no substantive detail about what declaration he so desires. Thus, this request for relief is considered moot.

[6] This Court will not address Defendant's further arguments in support of dismissing the Privacy Act claims, as such claims cannot be maintained against this Defendant.

Under the Privacy Act, "an individual may request the amendment of any record pertaining to him that the individual believes to be inaccurate, irrelevant, untimely, or incomplete." *Walia v. Holder*, 59 F. Supp. 3d 492, 501 (E.D.N.Y. 2014) (citing 5 U.S.C. § 552a(d)(2)). If an agency fails to maintain the individual's records in accordance with the Privacy Act, an individual may bring a lawsuit in a district court. 5 U.S.C. § 552a(g)(1). However, "the only proper defendant in a claim brought pursuant to the Privacy Act is the agency which maintains the records in question." *Walia*, 59 F. Supp. 3d at 501. Here, Plaintiff has brought the Privacy Act claim against Defendant, the United States. ECF No. 9. However, Defendant, the United States, is not an "agency." As such, Defendant is not the appropriate defendant for Plaintiff's Privacy Act claim and thus, it is DISMISSED against the United States.[7]

### IV.    Leave to Amend

Although Plaintiff does not request leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). The decision to grant leave to amend is within the discretion of the court, and "where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Id.*

Here, to the extent that Plaintiff can plausibly allege a claim related to back pay that is not moot or some other theory that is not barred by the CSRA, such amendment would not be futile. Plaintiff's claim against Defendant for retaliation is dismissed with prejudice because it is barred

---

[7] In his response to Defendant's motion to dismiss, Plaintiff seeks to substitute the "Department of Navy (Military Sealift Command)" as Defendant for his Privacy Act claim. Because Plaintiff's Second Amended Complaint has been dismissed in its entirety, this request is moot. However, Plaintiff may clarify his claims and his parties in any amended complaint.

by the CSRA, and any amendment would be futile.  As Plaintiff's claims have been dismissed, his motion for partial summary judgment is denied as moot.

## CONCLUSION

For these reasons, Defendant's motion to dismiss (ECF No. 20) is GRANTED. Plaintiff's back pay claim is DISMISSED WITHOUT PREJUDICE. Plaintiff's retaliation claim is DISMISSED WITH PREJUDICE.  Both Plaintiff's motion for summary judgment and motion to substitute are DENIED AS MOOT. Plaintiff may file an amended complaint by June 12, 2026.

IT IS SO ORDERED.

Dated:  May 12, 2026
        Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

11